## TOM SOUTHER v. STATE.

No. A-2402. Opinion Filed December 18, 1915.

(153 Pac. 293.)

1. **LARCENY—Sufficiency of Evidence.** In a prosecution for the theft of a hog, the evidence considered and found insufficient to warrant a conviction.

2. **INSTRUCTIONS. — Testimony of Accomplice — Corroboration.** Whenever the case for the state depends upon the testimony of an accomplice, the court should instruct the jury on the law (section 5884, Rev. Laws), requiring the testimony of an accomplice to be corroborated.

*Appeal from District Court, Cherokee County;*
*John H. Pitchford, Judge.*

Tom Souther, convicted of the larceny of a hog, appeals. Reversed.

*J. D. Cox* and *S. A. Horton,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error, Tom Souther, and Jess Nichols were jointly charged with the theft of "one white and one black spotted gilt about fourteen months old, marked crop off the right ear, the property of James Ward."

The defendant Jess Nichols was granted immunity and he testified as a witness for the state. Upon the trial the jury returned a verdict of guilty as charged, but failed to assess the punishment. On the 22nd day of September, 1914, the court rendered judgment and sentenced the defendant to be confined in the reform school at Granite for the term of two years. To reverse the judgment an appeal was perfected by filing in this court on February 13, 1915, a petition in error with case-made.

A number of questions are raised in the petition in error and brief, however, the only question we deem necessary to consider is the sufficiency of the evidence to support the verdict.

James Ward testified that he lived near Peggs, and that he had lost a black and white spotted gilt, about fourteen months old, marked by crop off the right ear, and that he did not know what became of her.

Jess Nichols testified, after stating his name, as follows:

"Q.   I will ask you if you were acquainted with the following hog; one black and white spotted gilt, about fourteen months old, marked crop in the right ear?  A.  Yes, sir.

"Q.   Where did you see that animal last?  A.   Back out there in the mountains.

"Q.   What became of her?  A.   We killed her.

"Q.   What did you do with her?  A.   Eat her.

"Q.   Where did you take it?  A.   Up to Tom's house.

"Q.   In what county was this?  A.   Cherokee County, Oklahoma.

"Q.   And on or about the 15th day of April, 1914?  A. Yes, sir.   Somewhere along about that time."

On cross-examination he stated the county attorney promised him if he would turn "state's evidence," the case against him would be dismissed, and admitted that he stated in the presence of several persons after the promise of the county attorney, that the hog that they killed was "an unmarked solid coal black hog," also that his mother owned a lot of hogs running on the same range where he killed this hog, and that some of them were not marked; that he could not recollect for sure whether the hog they killed was marked or not.

The defendant testified in his own behalf that he and Jess Nichols killed a black sow, weighing between seventy-five and a hundred pounds; that Jess Nichols was working for him and he told him he was going to Tahlequah and get some meat and

Nichols said, "We are out of meat down at home too, mama has been trying to get us to kill one for three or four days, we will just go over there and kill one and you can take part of the meat and I will take the other part." That they went over and found the hogs and Nichols pointed out an unmarked black hog, saying "That gilt right there is mine, and we will just kill her," that they killed the hog and carried it to his house, and Jess Nichols dressed it; that Mrs. Nichols' hogs run on the range with Mr. Ward's hogs; that the hog they killed was a coal black hog, and was unmarked; that he had often helped to catch and mark hogs for Mrs. Nichols and the hog they killed was one that got away the last time he helped to mark some hogs for Mrs. Nichols, that they killed the hog about five o'clock in the afternoon and took out the entrails and left them lying there.

The wife of the defendant testified that it was a black hog, and was without marks; that she heard Jess Nichols tell her husband that he wanted him to go with him to kill one of his mother's hogs.

Several witnesses testified that they heard Jess Nichols say that the hog they killed was his mother's hog.

J. T. Parks, county judge for five years, and several other witnesses qualified as character witnesses and testified that the reputation of the defendant Tom Souther as a truthful law abiding citizen had always been good.

The witness, Jess Nichols, did not deny that he told the defendant that the hog that they killed was the property of his mother.

As a court of errors, it is not, as a rule, our duty to pass upon the facts of a case where there is evidence of the facts legally required to be shown, however, to justify a conviction two things are required, First, the *corpus delicti,* and, Second, the defendant's guilty agency in the crime. Here the case for the state depends upon the testimony of the co-defendant, an accomplice, who testified that he knew the hog that was taken, was the

property of James Ward, but he does not testify that the defendant Tom Souther knew that it was Ward's hog, nor does he dispute the fact that at the time he claimed that it was his mother's hog.

For this reason we are of the opinion that conceding the testimony to be *prima facie* sufficient to establish the *corpus delicti,* there is no evidence reasonably tending to show the defendant Tom Souther's guilty agency in the crime, or that the taking in so far as he was concerned was felonious. It appears that there was no instruction given or requested on the law requiring corroboration of the testimony of an accomplice. (Section 5884 Rev. Laws.)

Because the evidence is insufficient to sustain the conviction, the judgment is reversed and the cause remanded.

FURMAN and ARMSTRONG, JJ., concur.